Filed 8/28/13  In re K.H. CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re K.H., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEPHANIE H. et al.,<br><br>Defendants and Appellants. | F066855<br>(Super. Ct. No. 516453)<br><br>**O P I N I O N** |

## THE COURT[*]

APPEAL from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Marin Williamson, under appointment by the Court of Appeal, for Defendant and Appellant, Stephanie H.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant, Gary R.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Kane, J., and Franson, J.

Appellants Stephanie H. and Gary R. appeal from the juvenile court's jurisdictional finding that their one-year-old son, Kameron, is a dependent under Welfare and Institutions Code section 300, subdivision (b).[1] They contend there was insufficient evidence of a current risk of harm to support the finding by substantial evidence. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In October 2011, the Stanislaus County Community Services Agency (agency) received a report that Stephanie gave birth to Kameron and admitted to a social worker she used methamphetamine throughout her pregnancy with him. Though mother and child tested negative for drugs at the time of his delivery, Stephanie said she used drugs as recently as four days before his birth. The agency discovered Gary has a lengthy criminal history involving possession of methamphetamine and Stephanie, also a methamphetamine user, lost custody of three other children because of her drug use. The children were placed in guardianship with their maternal grandmother.

Stephanie admitted she started using methamphetamine in 2004. She stopped using it in 2005 but relapsed in 2010. She also admitted smoking methamphetamine at least once a week during her pregnancy with Kameron. Gary admitted having drug-related convictions but said he had not used methamphetamine for nine months. They agreed to participate in voluntary family maintenance services which required they complete substance abuse assessments and submit to random drug testing. Their case was closed, however, in April 2012 because they refused to participate.

In July 2012, the agency received a report that Stephanie was frequently seen under the influence, grinding her teeth, licking her lips, exhibiting facial twitching and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

falling asleep while eating. The agency investigated the referral but determined it to be inconclusive.

In October 2012, the agency initiated these proceedings after receiving a report that Stephanie and Gary were living in a storage unit with Kameron. They were observed smoking from what appeared to be a methamphetamine pipe and physically fighting each other in Kameron's presence.

The agency took then 11-month-old Kameron into protective custody and filed a dependency petition on his behalf alleging under section 300, subdivision (b) Stephanie and Gary's drug use and domestic violence placed Kameron at a substantial risk of harm. The agency placed Kameron with his maternal grandmother and siblings.

In late October 2012, the juvenile court ordered Kameron detained. An agency social worker met with Stephanie and Gary before and after the detention hearing to express the agency's concerns regarding Kameron's safety and offer them services including drug treatment. Stephanie denied needing any sort of drug treatment. Gary denied needing any services and both declined to drug test. Nevertheless, the social worker provided them referrals for various services including drug testing.

In its report for the jurisdictional/dispositional hearing, the agency informed the juvenile court it was unable to assess Stephanie and Gary's home because they did not provide an address. In addition, they did not utilize any of the services offered. Consequently, the agency recommended the juvenile court remove Kameron from their custody and offer them reunification services.

Stephanie and Gary challenged the veracity of the allegations in the petition and over multiple court sessions in December 2012 through February 2013, the juvenile court conducted a contested and combined jurisdictional and dispositional hearing.

Stephanie testified and denied using methamphetamine during her pregnancy or having a drug problem. She admitted saying she used methamphetamine during her

3

pregnancy with Kameron, but said it was under threat of being arrested. She denied subsequently telling the social worker she used methamphetamine and said she felt threatened by the social worker. She admitted, however, testing positive for methamphetamine during an agency-conducted urinalysis after Kameron's birth.

Stephanie denied living in the storage unit when Kameron was removed. She said she and Gary may have spent the night in the storage unit one or two nights after Kameron was removed while retrieving documents they needed for court. She said she and Gary moved into a four-bedroom home approximately a month before the hearing.

Officer Gordon Shimmel testified he responded to Stephanie and Gary's storage unit on October 8, 2012, to conduct a welfare check. He observed Gary moving household goods in and out of the storage unit. He also looked at Kameron and did not see any signs of physical abuse, although he thought Kameron was not properly dressed for the weather. He suggested Stephanie and/or Gary put a jacket on Kameron and one of them did. Shimmel could not tell if the family lived in the storage unit.

Officers Aaron Beatty and Joseph Johnson testified they were called to the storage unit in late October 2012 when the social worker took Kameron into protective custody. They could not tell if the family lived in the storage unit and did not observe anything that caused them concern for Kameron's physical safety.

Social worker Brooke Altamirano testified she asked Stephanie to drug test two or three times and Stephanie only agreed once to test. Ms. Altamirano said she also asked Stephanie and Gary several times if they would give her their address so she could assess their home and they refused.

Gary's attorney argued the agency failed to prove Gary and Stephanie placed Kameron at a substantial risk of harm and asked the juvenile court to dismiss the petition. Stephanie's attorney concurred.

4

The juvenile court found the petition true by a preponderance of the evidence and adjudged Kameron a dependent child under section 300, subdivision (b). The juvenile court stated it did not find Stephanie's testimony credible where "she continued to deny things that she previously had stated .…" Though the court found the circumstances justified assumption of jurisdiction, it did not believe there was sufficient evidence to remove Kameron from parental custody. Consequently, the juvenile court ordered Kameron returned to Gary and Stephanie's custody under a plan of family maintenance and set a family maintenance review hearing. This appeal ensued.

## DISCUSSION

Gary and Stephanie contend the agency failed to prove the allegations they were living in the storage unit and using drugs. Even if those allegations were true, they further argue, there was insufficient evidence those circumstances placed Kameron at a substantial risk of harm, thus warranting assumption of dependency jurisdiction under section 300, subdivision (b). Consequently, they contend the juvenile court's section 300, subdivision (b) jurisdictional finding is error.

Section 300, subdivision (b) provides as relevant here:

"[A] child … comes … within the jurisdiction of the juvenile court [if]:

"[¶ ] … [¶ ]

"(b)    [t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of [the] parent ... to adequately supervise or protect the child, … or by the willful or negligent failure of the parent … to provide the child with adequate … shelter … , or by the inability of the parent ... to provide regular care for the child due to the parent's ... substance abuse."

Proof of risk of harm at the time of the jurisdictional hearing is not required to support jurisdiction pursuant to section 300, subdivision (b), but may be satisfied by showing the child has suffered or there is a substantial risk that the child will suffer serious physical harm or abuse. (*In re Adam D*. (2010) 183 Cal.App.4th 1250, 1261.)

5

Moreover, the risk of substantial physical harm does not have to be an identified, specific hazard in the child's environment. (*In re Rocco M*. (1991) 1 Cal.App.4th 814, 824.) Rather, the requisite risk of harm can be found where the children are "of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*Ibid.*)

"When an appellant asserts there is insufficient evidence to support the judgment, our review is circumscribed. [Citation.] We review the whole record most favorably to the judgment to determine whether there is substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M*. (1997) 59 Cal.App.4th 289, 298.)

In this case, the juvenile court could reasonably infer from Gary and Stephanie's history of methamphetamine use, reports of their current use, Stephanie's presumptive positive test for methamphetamine and their refusal to drug test that they continued to use methamphetamine. The juvenile court could also infer they did not have stable housing and engaged in domestic violence.

Contrary to Stephanie and Gary's assertion, the juvenile court did not have to identify a defined risk of detriment to Kameron before taking jurisdiction over him. It was sufficient for the court to find that their drug use and Kameron's tender age warranted the court's protection. As the juvenile court noted, it does not have to wait until a child is seriously injured or abused to assume jurisdiction and take the steps necessary to protect the child. (*In re Heather A*. (1996) 52 Cal.App.4th 183, 194.)

We conclude substantial evidence supports the juvenile court's jurisdictional finding and find no error.

## DISPOSITION

The juvenile court's jurisdictional finding issued on February 7, 2013, is affirmed.